GUSTAVE BOULIGNY *v.* MME. EDMOND FORTIER AND HUSBAND, et als.

*Where there is no error of law appearing on the face of the record, the case will not be dismissed.*

*The act of mortgage is not a negotiable instrument ; and, unlike the notes which it secures, when assigned, is subject to all equities between the original parties.*

APPEAL from the Second District Court of New Orleans, *Morgan, J.*
*Roselius & Philips* for J. A. Merle, Intervenor and appellant.

*D. Augustin for plaintiff.*—The incapacity of the wife to contract is removed by the assent of the husband (C. C. 1775, 2420, 1779); but this is true only in cases where she can legally contract. For example, she can only contract with her husband in certain cases. C. C. 2421. She can not, excepting in certain enumerated cases, dispose of her dotal property. C. C. 2337. She cannot, when there exists a community of acquests and gains between her and her husband, acquire property for her separate account. C. C. 2371. To this last rule we have also exceptions, which will be hereafter noticed. Nor are the declarations of a married woman, in the generality of cases, binding on her, unless verified, or unless she has been benefitted by the contract; and the reason is, the controlling influence which the husband is always presumed to exercise on all her acts.

"Si la femme prenait en contractant la qualité de fille majeure, de femme divorcée ou de veuve, le contrat n'en serait pas moins nul : autrement ce serait ouvrir une voie pour éluder la loi.

Celui qui a contracté avec une femme doit s'imputer de n'avoir pas connu son état; ce n'est de la part de la femme qu'un simple dol qui ne peut donner lieu à aucune action criminelle. C'est un mensonge mais non pas un faux caractérisé."

Toulier, vol. 2, No. 622. *Pilcher* v. *Kerr,* 7 An. 145. *Mrs. Delery* v. *Her Husband et al.,* 7 An. 293. *Mosusier* v. *Kuntz et al.,* 14 An. 15. *Ib.* p. 169, and the numerous authorities therein cited. *McIntosh* v. *Smith,* 2 An. 757.

The husband is only responsible to his wife for the amount of her paraphernal property alienated, when it is proved that he has received the price or otherwise disposed of the same for his individual interest. C. C. 2367. *Olivier* v. *Her Husband,* 6 Rob. 36. *Suc. of Hurgis,* 3 An. 142. This proof, under the French Code (Art. 1450), results from the simple fact that the husband was a party to the act, and *multo magis* when he actually received the price. Troplong 2, 1447. Marcade 5, 1450. The same rule, with certain qualifications, prevails in Louisiana. *Gillet & Co.* v. *Deranco et al.;* 6 An. 590.

By a strict interpretation of the Arts. 2314, 2370 and 2374, all the effects of the spouses not satisfactorily established to have been brought in marriage, or acquired during the marriage by inheritance or by donation made to the one or to the other particularly, constitute the assets of the community or partnership of acquests and gains. We have already seen

BOULIGNY
v.
FORTIER.

the exception created by the Art. 2421, the Arts. 128 and 2336. We have no doubt that the wife may legally make an exchange of her paraphernal property, although our Code does not, as the Code Napoleon, 1407, contain any provision to that effect; and it is now the well settled jurisprudence of this State that the right of the wife to administer personally her paraphernal property and to alienate the same (C. C. 2361 and 2367) implies the faculty of investing or re-investing her paraphernal effects.

*Dominguez* v. *Lee*, 17 L. R. 299. *Terrell* v. *Sindic*, 1 Rob. 367. *Gonor* v. *Husband*, 11 Rob. 526. *Stroud et al.* v. *Kuntz et al.* 2 An. 930. *Young* v. *Young*, 5 An. 611. *Hanna* v. *Pritchard*, 6 An. 730. *Metcalf* v. *Clark*, 8 An. 286.

Under the *French Régime dotal*, as under our Civil Code, the property which is not declared to be dotal is paraphernal (C. N. 1574, C. C. 2360); and the wife has the administration and the enjoyment of her paraphernal property, but she cannot alienate it without the authorization of her husband or of the judge. C. N. 1576. C. C. 2361 and 2367. And under the French conventional community, the spouses may stipulate a simple community of acquests, which would then consist of the acquisitions made during the marriage by the spouses, jointly or separately, with the savings of their common industry and the fruits and revenues of their separate property. C. N. 1498. C. C. 2371.

Thus it is perceived that the provisions of our Code, in relation to our legal community and the paraphernal property of the wife, are a combination, or at least bear a great similarity to the *Régime dotal* and *Communauté réduite aux acquêts*.

Thus again under the *Régime dotal*, the husband who enjoys the paraphernal property of the wife is liable to all the obligations of the usufructuary (C. N. 1580); and under our Code, 2367 and 2368, the wife has an action against her husband for the restitution of her paraphernal property.

The system of *remploi* (reinvestment) is not as ample under our Code as under the Code Napoleon; but it is sufficiently recognized to authorize us to invoke, to a certain extent, the authority of the eminent French commentaries and jurists who have exhausted the subject.

That the system itself is not foreign to our laws is apparent, among others, from the following Articles of the Civil Code: 2336, 2340, 2341, 2355, 2421 and 70.

We have stated that the right of the wife to invest or reinvest her paraphernal effects, is derived from the liberal interpretation given to the Articles 2361, 2367 of the Civil Code. Were it not so, the investment would inure to the community to the extent of the amount invested. We have searched in vain in our reports for a case where the right of the wife to invest beyond her means was sanctioned by the court, but we have, on the contrary, found numerous decisions either setting aside conveyances made to the wife on the failure to show adequate means, or maintaining similar conveyances by reason of such adequate means. *Ellis* v. *Rush*, 5 An. 116; *Squier* v. *Stockton*, 5 An. 742; *Young* v. *Young*, 5 An. 60; *Metcalf* v. *Clark*, 8 An. 286; *Pearson* v. *Pearson*, 15 An. 119; *Clark* v. *Norwood*, 12 An. 598; *Cormier* v. *Ryan*, 10 An. 688; *Bass* v. *Larche*, 7 An. 104,

As the ability of the wife to acquire, during the marriage, property in her own name and for her separate account, is under our jurisprudence an exception to the general rule. C. C. 2384. It must be, therefore, strictly and rigidly construed; and consequently the wife is required, not only to prove that she had paraphernal effects at her disposal, but also that they were ample to enable her, reasonably at least, to make the new acquisition; otherwise the contract will be treated as a contract of the community. Such, without doubt, would be the result in a contestation between the creditors of the husband and the wife; and we can see no good reason to depart from the converse of the proposition, by denying to the wife the privilege of showing the true character of the contract, because of her declarations, which, as we have already stated, do not conclude her. 6 Rob. 65, *Prudhomme* v. *Edams*; *Erwin* v. *McCallop*, 5 An. 173; *Patterson* v. *Frazer*, 5 An. 586. The authority to invest does not carry with it the unbounded liberty to run into wild and ruinous speculations, and was never intended to place the wife having paraphernal property on a footing of perfect equality with a wife separated in property by judgment, or by contract, as would be the case, did we hold the third opponent to her contract.

We, therefore, concluded that it is against the policy of the law and the spirit and letter of our system of legal community to sanction contracts made by the wife, under pretext of investing her paraphernal effects, when, as in the case at bar, the amount invested bears no proportion to the value of the property substituted in its place, but, on the contrary, that all such acquisitions belong to the community, saving always to the wife her action for the reimbursement of the price contributed by her.

Our notions of the necessary conditions to constitute a valid investment, are perhaps more inflexible (apart from certain forms which do not here require notice) than those generally entertained in France, but this is due principally to the difference which marks the two systems, as will be at once perceived by reading the Articles 1407 and 1408 of the Napoleon Code; yet we are not the less satisfied that our conclusion, as to the real nature of the Livaudais purchase, would undoubtedly be the same under the French tribunals. The controlling opinion in France is, in spite of Article 1407 N. C., that when the property received in exchange, or acquired by way of *remploi*, by one of the spouses, is of double the value of the one ceded in counter exchange, or of the price invested, that the undivided half of the newly acquired property belongs of right to the community; but that when the difference is more than fifty per cent, then the property belongs either in whole or proportionally, to the community, according to the particular facts of each particular case. Pothier, Traité de la Com. Part 1st, Ch. 2, Nos. 197 and 198; Marcadé verbo Cont. de Mar. vol. 5, Art. 1435, S. 2; Troplong vol. 1, 637; Duranten vol. 14, Nos. 195 and 391.

The third opponent, John A. Merle, from the facts that the notes by him discounted from Bouligny & Ganucheau, showed on their face that they were given by a married woman, had sufficient notice to him, as it was so to the world, to put him on inquiry as to whether these notes had inured to her own separate use, before he discounted them. *DeGaalon* v. *Matherne, Wife of Girod*, 5 An. 495; 4 R. 508, 1st Art. 428.

This doctrine, which has been recognized by the Supreme Court, from 7 N. S. 64 down to the decision herein rendered, flows from the plain principle of the civil law, "*Qui cum alio contrahit non ignarus conditionis ejus esse debet.*" Dig. Lib. 50, Titre 17, L. 19.

The Livaudais plantation, which was mortgaged for Bouligny and Ganucheau's notes, transferred by them to the third opponent, has been declared by the Supreme Court to be community property, although purchased in the wife's name, consequently subject to her legal mortgage, which is much anterior to that of the third opponent.

Consequently, all acts of mortgage and notes furnished by the said wife, with authority of her husband, not shown to have inured to her own separate benefit, are obligations for the payment of community debts, which her husband was bound to pay, and for which she was forbidden by law to bind herself. C. C. 2412, 1784.

Supposing the case that the notes of the appellee, Mme. Edmond Fortier, could be viewed as negotiable notes, the mortgage given to secure the same did not partake of that negotiability. See *Schmidt v. Fry,* 8 R. 435; 5 An. 495; 5 N. S. 56.

HOWELL, J. In February, 1853, the defendant, Mrs. Edmond Fortier, authorized by her husband, purchased of J. A Livaudais a plantation and the slaves thereon, in this parish; paying part cash, giving her own four notes, secured by mortgage on the property, for a part of the price, and for the balance assuming certain incumbrances then existing on said property.

In March, 1856, during the ownership under said purchase, she issued four other notes to her own order, amounting to $18,000; and, to secure their payment, executed a special mortgage on said property in favor of her factors, Bouligny & Ganucheau, of this city, or any holder thereof. In December, 1857, she drew four drafts, amounting to $25,000, in favor of Wm. Holmes & Co., on, and accepted by, said Bouligny & Ganucheau, and gave the latter another mortgage on said property, to protect them against the payment thereof.

The plaintiff, Gustave Bouligny, as the holder of the last of the four notes given by her in part payment of the purchase price, in 1853, caused the property to be seized and sold under executory process; and, becoming the purchaser at said sale, retained in his hands under Art. 707 C. P. the sum of $38,540 64, to satisfy *pro tanto* the said two special mortgages in favor of Bouligny & Ganucheau. In this proceeding Mrs. Edmond Fortier intervened by third opposition, making her husband, the plaintiff, and the mortgagees, Bouligny & Ganucheau, parties ; and, on appeal, this court rendered a judgment in her favor, declaring the said purchase from Livaudais, and the said two special mortgages in favor of Bouligny & Ganucheau, to be for account of the legal community existing between her and her husband; releasing her from all personal liability growing out of said acts of sale and mortgage; condemning her husband to pay her, in restitution of her paraphernal property, $46,188 38, with a legal mortgage on all his immovable property; ordering the plaintiff or his succession to pay to her, in part satisfaction of said sum, the said amount of $38,540 64, retained as aforesaid by the plaintiff, and in de-

fault thereof the said property, purchased by said plaintiff, be seized and sold for cash.

Jno. A. Merle, third opponent herein, having in due course of business become the holder of the four mortgage notes, amounting to $18,000, issued by Mrs. Fortier in March, 1856, to Bouligny & Ganucheau, claims payment thereof, as next in rank, with privilege, out of the said sum of $38,540 64, held as aforesaid to satisfy said two mortgages.

To this third opposition Mrs. Fortier sets up the plea of *res judicata;* denies that she ever derived any benefit from said transaction, and denies ownership of the property mortgaged, and generally all the allegations of the petition of third opposition.

Upon these pleadings and the evidence (including the pleadings and evidence in the whole record in this case), the district judge dismissed the third opposition of Merle, from which judgment he appeals.

The appellees, Mrs. Fortier and husband, make a motion to dismiss the appeal, under Art. 897 C. P.; but it is manifest that this motion cannot prevail, as the evidence is before us, and the clerk's certificate is in due form.

On the merits, we are of opinion that the district judge decided correctly in dismissing the third opposition.

It will be observed that the appellant is seeking to enforce his rights of mortgage upon the proceeds of the sale of mortgaged property, and not to recover judgment on negotiable paper. As to the transferee and holder of the mortgage notes, he has no greater rights under the act of mortgage than his transferrors, the original mortgagees, had; and, as to them, it is decided that this mortgage is without effect against Mrs. Fortier, and must yield to her claim or right to this very fund. The act of mortgage is not a negotiable instrument, and, unlike the notes which it secures, when assigned, is subject to all equities between the original parties. See 8 R. 435.

The record before us presents nothing to change or modify the judgment in favor of the wife. There was a community of acquests and gains existing between Mrs. Fortier and her husband when she gave the mortgage in question on the property, which is shown to be community property, and from the sale of which this fund was derived; and her right to a judgment recognizing her mortgage as attaching to said fund is not affected by any evidence adduced by Merle, the appellant.

Judgment affirmed, with costs.